NEWARK TRUST COMPANY, complainant-appellant,

*v.*

LACKAWANNA INVESTMENT COMPANY, defendant-respondent.

[Submitted December 15th, 1917. Decided March 4th, 1918.]

A corporation consisting of Powell and Crocker made a mortgage to Crocker for the sole purpose of having him assign it to the Newark Trust Company to secure a loan for the benefit of the mortgagor. The scheme, which involved the false representation that the mortgage was genuine and that the full amount was due thereon, was successful, and the mortgage was assigned to the trust company by Crocker as collateral to his $5,000 note and any other liability of his to the trust company. Later such other liability arose and the mortgage was foreclosed.—*Held*, that the mortgagor had no equity superior to the legal rights of the trust company.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Lane, whose opinion is recorded in *102 Atl. Rep. 14.*

This is a bill to foreclose a mortgage made by the Lackawanna Investment Company to Roland D. Crocker and by him assigned to the Newark Trust Company as collateral security for the payment of Crocker's note of $5,000 and any other liability of his to the trust company.

Additional facts found by the vice-chancellor are as follows:

"The stock of the Lackawanna Investment Company was all owned by Roland D. Crocker and one Powell. They and one other, a dummy, constituted its board of directors. Powell was

a member of the board of directors of the Newark Trust Company. Crocker was also a member of its board of directors and of its executive committee. He was its counsel and was as well the personal counsel of Powell. The Lackawanna Investment Company desired to obtain from the Newark Trust Company $5,000. Crocker represented to Powell that it would be easier to obtain a loan of $5,000 with a mortgage for $8,000 rather than $5,000 as collateral; that there should be this excess was rendered necessary by a rule of the banking institution known to Powell which required that the advance should not exceed eighty per cent. of the value of the collateral. The loan was granted; the mortgage pledged; the $5,000 was advanced and paid to the Lackawanna Investment Company, and this is the only sum that was ever paid on account of the mortgage. On the 12th day of May, 1914, approximately three years after the transaction hereinbefore referred to, the bank loaned $2,500 to one Ackor and took his note endorsed by Crocker. This note was never paid. Protest was waived and the indebtedness is an indebtedness of Crocker. The bank claims to hold the mortgage as collateral, not only to the $5,000 Crocker note, but as collateral to the Ackor note. There is no evidence that the bank advanced the money to Ackor upon the faith of its holding the assignment of the mortgage." Upon these facts it was held that the equity of the mortgagor was superior to the legal rights of the bank as holder of the Ackor note.

*Messrs. Raymond, Mountain, Van Blarcom & Marsh,* for the appellant.

*Messrs. Lehlbach & Johnson,* for the respondent.

The opinion of the court was delivered by

GARRISON, J.

The learned vice-chancellor dealt with this case as if it had its inception in a debt due to Crocker by the investment company and secured by its mortgage, which, having been assigned to the trust company, was subject to the equities of the mortgagor

against the assignor. In fine, he treated the mortgage as a security between the parties to it. The real transaction was far otherwise. There was no debt, and the mortgage purporting to secure one was a contrivance devised to deceive the trust company for the purpose and in the manner disclosed by the testimony. It was of the essence of the scheme thus disclosed that the trust company should be made to believe that the mortgage was genuine, and that the full amount was due thereon. , The scheme, therefore, necessarily involved the making of a false representation. This false representation was made by both mortgagor and mortgagee, for this court, sitting as a court of equity, has said: "In order to establish a case of false representation, it is not necessary that something that is false should have been stated as if it were true. If the presentation of that which is true creates an impression which is false, it is, as to him, who, seeing the misapprehension, seeks to profit by it, a case of false representation." *Lomerson* v. *Johnston, 47 N. J. Eq. 312.*

If this be true under the passive conditions stated in the text, how much more so must it be true when the misapprehension was actively contrived.

With the real nature of the transaction thus laid bare, we are in a position to see in their true light the equitable relations of the parties to this transaction when the mortgage is regarded as a security, which is the only light in which it is regarded by a court of equity. The mortgage was created for the sole purpose of serving as a security to the Newark Trust Company, to which it was to be assigned by Crocker. Hence, until it was so assigned, *i. e.*, while it was in the hands of Crocker, it was not, in the eye of equity, a mortgage, since it secured nothing. Crocker, while ostensibly mortgagee, was in fact a mere conduit through whom the mortgage was to reach the trust company and have vitality infused in it by securing the loan made upon the strength of it and any other indebtedness of the assignor to the bank.

Out of this situation two highly pertinent considerations arise —*first,* that the relation of mortgagor and mortgagee never having existed between the respondent and Crocker, no equity based upon that relation came into existence, and *second,* that as

the mortgage became such for the first time in the hands of the trust company, the primary obligation secured by it was a negotiable promissory note given to the trust company before maturity, and there is excellent authority for the proposition that the assignee of a mortgage under such circumstances holds it free from equities between the parties, although, as we have seen, in the present case, no such equities existed.

These considerations are mentioned chiefly for the purpose of pointing out the diametrical difference that exists between the normal cases in which the equity of a genuine mortgagor arises and the present case; from which it follows that it is totally inadmissible to assume, by way of analogy, that because an equity arises in those cases it also arises in this case.

Equally inadmissible is it to construct an original equity for this mortgagor out of its conduct in this transaction. An equity has been variously defined, but always in terms of good faith and conscionable conduct. Chicanery, deceit and misrepresentation are not such stuff as equities are made of. To determine this is to decide that the respondent has no equity.

The court below decided that the appellant had no equity, and we now decide that the respondent has none. In this state of equilibrium, the legal rights of the appellant will be enforced by a court of equity under its maxim that where equities are equal the law will prevail, for there can surely be no greater equality between equities, within the meaning of the maxim, than their mutual non-existence. The trust company is entitled to enforce its mortgage as collateral to the Ackor note.

The decree of the court below is reversed and the record remitted for further proceedings in accordance with the views herein expressed.

WHITE, J. (concurring).

My vote in this case rests solely upon the presumption, in the absence of proof to the contrary, that the trust company being the holder of the contract making the assigned mortgage security for subsequent obligations of the borrower at the time it accepted him as an endorser, accepted such endorsement on the faith or credit of such contract, and that, consequently, the endorser and

the mortgagor who connived with him are both estopped by their former misrepresentation from now saying that the mortgage was for a smaller sum than they then said it was for.

*For affirmance*—MINTURN—1.

*For reversal*—GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—12.